IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DON McADAMS,
Fed. Reg. No. 37768-177,
    Plaintiff,

vs.                                     Case No.: 5:15cv312/WTH/EMT

A. PELT, Optometrist, et al.,
    Defendants.
_____/

# REPORT AND RECOMMENDATION

This cause is before the court upon Defendant Eden Abad's Motion to Dismiss Plaintiff's Amended Complaint for failure to state a claim (ECF No. 52). Plaintiff has filed a response in opposition (ECF No. 58).

Dismissals for failure to state a claim are governed by Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). To survive the motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation and citation omitted). A claim is plausible on its face where "the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> . . . a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual

> allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679. Finally, consistent with the foregoing precepts, in civil rights cases more than "mere conclusory notice pleading" is required, and a complaint is subject to dismissal "as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation and citation omitted).

Plaintiff claims that he received inadequate attention to his eyes, particularly his right eye, following an April 28, 2012, incident in which he was injured while playing softball, evidently at the Federal Correctional Institution at Marianna, Florida ("FCIM"), where he was incarcerated prior to his transfer to the Federal Correctional Institution at Seagoville, Texas. Plaintiff claims the failure to properly treat his eye during the several months he was at FCIM resulted in him "going blind" (ECF No. 14 at 5).

Prior to the softball injury, Plaintiff had been diagnosed with myopia or nearsightedness. Following the accident, on May 1, 2012, Plaintiff was seen by Defendant Eden Abad, who refers to herself as a "mid-level practitioner" (ECF No. 52 at 1). She noted Plaintiff to have "ecchymosis in his right eye lid" and in his "right

infraorbital area" (ECF No. 14 at 5). Instead of performing or ordering an "actual eye test," which according to Plaintiff would have prevented further damage, she evidently made a request for an appointment with an optometrist, but it was never followed up on (*id.*). After numerous complaints and trips to sick call regarding loss of sight, blurred vision, dizziness and headaches, Plaintiff again was seen on September 19, 2012, by Abad who did not treat his eye issues directly but ordered testing for high blood pressure, the results of which were negative. Abad's diagnosis of Plaintiff remained only myopia.

On November 3, 2012, Plaintiff underwent a vision test with a Ms. Pierce who found him to have 20/100 vision in his right eye and 20/60 vision in his left. When Plaintiff was next seen by Abad on November 5, 2012, Abad started him on propranolol for high blood pressure despite the fact that, according to Plaintiff, he did not have high blood pressure (ECF No. 14 at 7). Plaintiff stopped taking the propranolol because the medication allegedly made him sick. After Plaintiff returned to sick call complaining about his vision, he was again seen by Abad on January 24, 2013. He complained of blurred vision, dizziness, loss of sight, and headaches, which Abad again attributed to high blood pressure and therefore conducted no examination of his eyes (ECF No. 14 at 6). Plaintiff refused his blood pressure medication

because it made him ill and might have caused him harm.[1] On March 1, 2013, Abad evidently started Plaintiff on another medication for high blood pressure, antenolol, which Plaintiff also claims made him ill (ECF No. 14 at 7).

After a referral from another Defendant in this action, Dr. A. Pelt, on March 28, 2013, Plaintiff evidently was examined and diagnosed with "optic atrophy" in his right eye, which Plaintiff describes as having caused him permanent and irreversible damage (ECF No. 14 at 8). Plaintiff also relates that he was diagnosed with "hypertensive retinopathy" in both eyes (ECF No. 14 at 6–7). When Plaintiff again saw Abad on May 22, 2013, Abad maintained that Plaintiff's eye issues were due to high blood pressure and treated only that (*id.*).

Plaintiff concludes that Abad's failure to provide treatment for his eye condition caused him to have permanent loss in his vision. He therefore claims Abad was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment, for which he seeks compensatory and punitive damages.

Defendant Abad's motion to dismiss centers upon the contention that, because Plaintiff did receive some degree of medical care, Plaintiff's allegations amount only

---

[1] Plaintiff indicates that Abad refused to accept the medical determination of a Dr. Peddada, but he fails to describe neither Dr. Peddada nor his or her findings (ECF No. 14 at 7).

to a difference of medical opinion over the proper course of treatment and therefore cannot be the basis for a claim of deliberate indifference.

"Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (requiring that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")). The official must be consciously aware of the medical condition and the need for effective treatment and then callously or recklessly disregard it. See McElligott, 182 F.3d at 1257–58. Ordinarily, there is no constitutional violation when some measure of treatment is provided. Id. at 1259; see also Harris v. Thigpen, 941 F.2d 1495, 1504–05 (11th Cir. 1991). However, if the official knew that the present course of treatment went beyond a medical judgment call and was tantamount to no treatment at all, then an Eighth Amendment claim would exist. Id. at 1257–58.

Thus, a complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388,

393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted). A simple difference in medical opinion between the medical staff and an inmate as to the latter's diagnosis or course of treatment does not establish deliberate indifference. See Adams, 61 F. 3d at 1545 (the question of whether a plaintiff should have received different diagnostic tests or treatments is not an appropriate basis for grounding liability on a deliberate-indifference claim); Harris v. Thigpen, 941 F.2d at 1505. A claim of deliberate indifference requires proof greater than negligence or even gross negligence. Townsend v. Jefferson County, 601 F.3d 1152, 1158 (11th Cir. 2010).

Taking Plaintiff's allegations as true, the court finds they state a sufficient claim of deliberate indifference under the Eighth Amendment. Plaintiff complained of serious medical symptoms, especially worsening sight and blurred vision, and never received appropriate treatment for it, resulting in permanent damage to his

vision.  Although Abad's alleged misdiagnosis of high blood pressure might sound only in malpractice or negligence, especially in the early going, it plausibly became more than that after Plaintiff was diagnosed with "optic atrophy" and hypertensive retinopathy, diagnoses that Abad allegedly ignored.

Abad also asserts that she is entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  The Supreme Court has explained that "the driving force" behind the qualified immunity doctrine is to ensure that "'insubstantial claims' against government officials be resolved prior to discovery and on summary judgment if possible."  Anderson v. Creighton, 483 U.S. 635, 640 n.2, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).  Because this defense should be applied at the earliest possible stage of litigation, it is proper for a district court to rule on a claim of qualified immunity asserted in a motion to dismiss, Gonzalez, 325 F.3d at 1233, although the defense is more "typically addressed at the summary judgment stage of a case."  St. George v. Pinellas Cnty.,

285 F.3d 1334, 1337 (11th Cir. 2002). To survive a motion to dismiss on qualified immunity grounds, a plaintiff must satisfy the two-pronged qualified-immunity standard: (1) the facts alleged in his complaint constitute a violation of his constitutional rights, and (2) the constitutional rights were "clearly established" when the defendant committed the complained-of act. Pearson, 555 U.S. at 232. A qualified-immunity inquiry can begin with either prong; neither is antecedent to the other. *Id.* at 236.[2]

Since the court has already concluded that the facts as alleged by Plaintiff are sufficient to constitute a violation of his Eighth Amendment rights, the first prong of the qualified immunity analysis is met. With regard to the "clearly established" prong, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." Loftus v. Clark–Moore, 690 F.3d 1200, 1204 (11th Cir. 2012) (internal quotation marks omitted). A case with materially identical facts is not necessary for the law to be clearly established, "but the

---

[2] To receive qualified immunity, a public official must first establish that she was acting within the scope of her discretionary authority when the allegedly wrongful acts occurred. Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). A government official acts within her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority. Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006). Here, there is no evident dispute that Defendant was acting within her discretionary authority.

Case No.: 5:15cv312/WTH/EMT

preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." Youmans, 626 F.3d at 563 (citation omitted).

"[Eleventh Circit] cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference." Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995) (citing Carswell v. Bay Cnty., 854 F.2d 454, 457 (11th Cir. 1988); Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985)). "A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." McElligott, 182 F.3d at 1257. Thus, the law in this circuit is clearly established that a significant delay in treatment for injuries that are obviously serious medical needs are constitutionally actionable. Harris v. Coweta Cty., 21 F.3d at 393–94 (collecting cases). Especially at the stage of a motion to dismiss, the court finds under the alleged facts that Defendant's failure to provide necessary treatment for Plaintiff amounted to a violation of a clearly established right under the Eighth Amendment.

Case No.: 5:15cv312/WTH/EMT

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

That Defendant Eden Abad's Motion to Dismiss (ECF No. 52) be **DENIED**.

At Pensacola, Florida, this 27th day of April 2018.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.